IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-00083-01-CR-W-FJG |
| | ) | |
| ROBERT HENDERSON, | ) | |
| | ) | |
| Defendant. | ) | |

PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Matt J. Whitworth, Acting United States Attorney, and Matthew P. Wolesky, Assistant United States Attorney, and the defendant, ROBERT HENDERSON ("the defendant"), represented by Anita Burns.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count Two of the indictment charging him with a violation of 17 U.S.C. § 506

and 18 U.S.C. § 2319, that is, Criminal Copyright Infringement. A copy of the indictment setting forth the charge in Count Two is attached as Exhibit A. The defendant also agrees to forfeit to the United States the property described in the Forfeiture Allegation of the indictment. By entering into this plea agreement, the defendant admits that he knowingly committed this offense, and is in fact guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which he is pleading guilty are as follows:

Between on or about May 1, 2008, and on or about July 18, 2008, in the Western District of Missouri, ROBERT L. HENDERSON, defendant herein, did willfully, and for the purpose of commercial advantage or private financial gain, infringe a copyright by reproducing and distributing, during a 180-day period, ten (10) or more copies of one (1) or more copyrighted works, to wit: motion pictures, which have a total retail value of more than $2,500, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319(b)(1).

On July 18, 2008, Lee's Summit Police Department (LSPD) Detectives responded to the East Glenn Movie Theater, 1451 N.E. Douglas Street, Lee's Summit, Missouri, in response to a call that an individual was recording the new Batman movie, *The Dark Knight*, with his video camera. LSPD Detective Ide spoke with Ralph Richard, who works for the Motion Picture Association of America (MPAA). Richard stated that he and Joel Voyles, who also works for the MPAA, observed an individual, later identified as ROBERT HENDERSON, come inside the theater carrying what appeared to be a winter coat, which they found odd given the weather in July. HENDERSON bought a ticket for *The Dark Knight* and went inside. Voyles followed HENDERSON into the theater. HENDERSON sat in the very back row in the middle. Voyles sat in the back row as well, on the end. Voyles observed HENDERSON mound up the coat on the arm rest to his right side. Voyles said he believed that HENDERSON was then looking and setting up a video recorder. Voyles said he believed he could see the chrome ring by the lens of the camera and that the rest of the camera was covered by a black piece of cloth.

Voyles contacted Richard by cellphone and told him to call the police. When the detectives arrived, they accompanied Richard into the theater where HENDERSON was recording the movie. Voyles confronted him, and grabbed the camera. Voyles brought

-2-

HENDERSON, his camcorder, and the black piece of cloth (which was covering the camera) to the detectives.

Voyles then informed LSPD of the events that led to their being at the East Glenn theater. Voyles explained that the MPAA attempts to locate pirated movies on the Internet. While doing so on July 3, 2008, they discovered a digital copy of the movie *Hancock* on the Internet, which was available for people to download. *Hancock* had just been released to movie theaters the day before on July 2, 2008. The MPAA investigators downloaded and examined the movie. During the examination, they discovered the watermark in the movie that identified it as being recorded in the Lee's Summit, Missouri East Glenn Theater.

Voyles explained that all movies released to a theater have a specific watermark. Jeff Duval of *Deluxe*, a company which creates the watermarks and prints the movies for movie studios, explained that all movies are watermarked, and that each print of a movie is unique to the theater it is distributed to. In other words, every theater receives a copy of a movie and for each copy there is a unique identifying watermark that allows the MPAA (through the labs at *Deluxe* or *Technicolor* depending on the studio) to determine which theater a pirated movie was pirated from. This watermark is visible to the naked eye, if you know what you are looking for, although the watermark only appears for a brief time.

Voyles told LSPD that they discovered another movie, *Meet Dave*, which they believed was also camcorded from the same theater. Voyles, and other MPAA investigators, were sent to the Lee's Summit theater to investigate and do surveillance the weekend of the release of *The Dark Knight*. While doing so, they encountered HENDERSON.

The detectives obtained Missouri state search warrants for HENDERSON's residence at 13404 Bristol, Grandview, Missouri, and HENDERSON's vehicle.

During the search of HENDERSON's car, detectives found a black bag with two trays of DVDs, which contained counterfeit DVDs. These DVDs were in a container that essentially appeared to function as his mobile store–as it was color coded and indexed by movie title. There were multiple copies of each title.

During the search of HENDERSON's residence, detectives discovered numerous counterfeit DVDs from multiple rooms in the residence and several computers.

All of the computers that were seized were sent to the Heart of America Regional Computer Forensic Laboratory for further analysis. Forensic Examiners found ripped movies on the computer, DVD burning software, movie DVD covers (jpg files), video editing help files (from the Internet), and Internet search history for theaters, movie times, CD and DVD cover photos, and movies.

Detective Cox reviewed the contents of the videotape in HENDERSON's video camera. The first movie on the tape was a partial recording of *The Dark Knight*. The next movie on the tape was *Hell Boy 2*, and the final item on the tape was a partial recording of *The Chronicles of Narnia - Prince Caspian*.

This tape was submitted to *Technicolor* for analysis. *Technicolor* was able to find the watermark for *Hellboy 2 - The Golden Army*, and they determined it was also recorded from the East Glen Theater. *Hellboy 2 - The Golden Army* was released to the movie theater on July 11, 2008.

Voyles provided LSPD with a DVD containing surveillance video of HENDERSON entering the East Glenn Theater on July 2, 2008, July 11, 2008, and July 18, 2008. Each time, HENDERSON was entering the theater carrying a jacket.

Gary Kissinger of the Motion Picture Association of America, Inc. (MPAA) examined the evidence seized in this case. He confirmed the movies recovered were counterfeit, and that the counterfeit movies made, sold and possessed by HENDERSON were of copyrighted works. Additionally, Mr. Kissinger stated that the value per DVD title was $19.95. A total of 1,240 counterfeit DVDs were recovered in this investigation from HENDERSON. Therefore, Mr. Kissinger stated the total loss to the MPAA is $24,738.00.

HENDERSON also agrees that the property listed in Table A of the Indictment, incorporated in this agreement as Exhibit A, contains items that are subject to forfeiture as described in this agreement; specifically that the items are infringing copies, devices or equipment used in the manufacture of such infringing copies, that is, copies manufactured, reproduced, distributed, sold, or otherwise used, intended for use, or possessed with the intent to use in violation of Section 506(a), and property which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 2319.

    **4. Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and

other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

    **5. Statutory Penalties.** The defendant understands that upon his plea of guilty to Count Two of the indictment charging him with Criminal Copyright Infringement, the maximum penalty the Court may impose is not more than five years of imprisonment, a $250,000 fine, three years of supervised release, an order of restitution and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class D felony.

    **6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to three years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f. any sentence of imprisonment imposed by the Court will not allow for parole;

g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

i. The defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings.

j. The defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set

forth in 21 U.S.C. § 853(p) (which is applicable to this action pursuant to 17 U.S.C. § 506(b) and 509(a), 18 U.S.C. § 981(a)(1)(C) and 1956(c)(7) and 28 U.S.C. § 2461(c), all as set forth in the Forfeiture Allegation of the Indictment which is attached as Exhibit A, including but not limited to the following specific property: All of the property listed in Table A of the Indictment, which is incorporated in this plea agreement as Exhibit A. With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution.

 k. The defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which he has or had any direct or indirect financial interest, or exercises or exercised control, directly or indirectly, during the period from May 1, 2008, to the present. The defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets.

 l. The defendant agrees not to contest the transfer of the property described in Table A of the Indictment, incorporated as Exhibit A of this agreement, from the Lee's Summit, Missouri Police Department and the Federal Bureau of Investigation to the United States and to take whatever steps are necessary to facilitate that transfer. The defendant specifically agrees and authorizes any state or local law enforcement agency having possession of property subject to federal forfeiture to release the property to a federal agency either prior to or after entry of an order forfeiting the defendant's interest in such property. Further, the defendant agrees to hold harmless any state or local law enforcement agency which releases such property to any federal agency for federal forfeiture proceedings.

 m. The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing.

 n. The defendant states that he is the sole and rightful owner of the property described in Table A of the Indictment, incorporated as Exhibit A of this agreement, and that to the best of his knowledge no one else has any ownership or other interest in the property. In the event any federal, state or

local law enforcement agency having custody of the property decides not to pursue forfeiture of the property due to its minimal value, the defendant hereby abandons any interest he has in such property and consents to the destruction or any other disposition of the property by the federal, state or local agency without further notice or obligation whatsoever owing to the defendant.

    o.  At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of forfeitable assets and restitution.

    **7.  <u>Government's Agreements</u>.**  Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the defendant's illegal counterfeiting operation for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Counts One, Three and Four at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely

on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

**8. <u>Preparation of Presentence Report</u>.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant

expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

**9. Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

**10. Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

   b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2B5.3(a), which provides for a base offense level of 8;

   c. The parties agree that a four-level enhancement applies pursuant to U.S.S.G. § 2B5.3(b)(1)(B) and § 2B1.1, for economic loss as a result of the

-10-

Case 4:09-cr-00083-FJG   Document 21   Filed 10/07/09   Page 10 of 20

defendant's criminal conduct which that parties agree is between $10,000 and $30,000.

      i. The parties agree that the total number of counterfeit DVDs used to calculate this figure is 1,240. The parties agree that a $19.95 per DVD loss figure should be used to calculate the loss for the MPAA, and therefore the total loss to the MPAA is $24,738.

    d. The parties agree that a two-level enhancement applies pursuant to U.S.S.G. § 2B5.3(b)(2), for copyright infringement of work being prepared for commercial distribution (i.e. distributing movies that were still playing in movie theaters).

    e. The parties agree that a two-level enhancement applies pursuant to U.S.S.G. § 2B5.3(b)(3), for copyright infringement involving the manufacture, importation or uploading of counterfeit works.

    f. The parties agree that a two-level enhancement applies pursuant to U.S.S.G. § 3B1.3, for copyright infringement involving a special skill (i.e. use of decryption software or otherwise circumventing a technological security measure to an infringed item).

    g. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

    h. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

    i. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this

paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

j. The United States agrees not to seek an upward departure from the Guidelines or a sentence outside the Guidelines range, and defendant agrees to not seek a downward departure from the Guidelines or a sentence outside the Guidelines range. The agreement by the parties to not seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

k. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

l. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in

-12-

Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charges in the indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

-13-

**14. <u>Waiver of Constitutional Rights.</u>** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a.  the right to plead not guilty and to persist in a plea of not guilty;

    b.  the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    c.  the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d.  the right to confront and cross-examine the witnesses who testify against him;

    e.  the right to compel or subpoena witnesses to appear on his behalf; and

    f.  the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

-14-

Case 4:09-cr-00083-FJG    Document 21    Filed 10/07/09    Page 14 of 20

## 15. Waiver of Appellate and Post-Conviction Rights.

a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

## 16. Financial Obligations.

By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

a. The Court must order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged related criminal activity.

b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises

-15-

Case 4:09-cr-00083-FJG   Document 21   Filed 10/07/09   Page 15 of 20

control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100.00 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

h. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the

-16-

Case 4:09-cr-00083-FJG   Document 21   Filed 10/07/09   Page 16 of 20

financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Agreement to Destruction of Biological Evidence.** In accordance with 18 U.S.C. § 3600A(c)(2), the defendant knowingly and voluntarily waives his right to request DNA testing of any biological evidence which may have been obtained or seized by law enforcement in his case. Defendant agrees that all biological evidence which may have been obtained or seized may be destroyed by law enforcement authorities.

-17-

**20. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**21. Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is

satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

22. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed

against either party, whether or not that party was involved in drafting or modifying this agreement.

                                    Matt J. Whitworth
                                    Acting United States Attorney

Dated: 10/7/09                        */s/Matthew P. Wolesky*
                                    Matthew P. Wolesky
                                    Assistant United States Attorney

     I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 10/7/09                        */s/Robert Henderson*
                                    ROBERT HENDERSON
                                    Defendant

     I am defendant ROBERT HENDERSON's attorney. I have fully explained to him his rights with respect to the offenses charged in the indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, ROBERT HENDERSON's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 10/7/09                        */s/Anita Burns*
                                    Anita Burns
                                    Attorney for Defendant